**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2024-Ohio-1015.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1015

THE STATE EX REL. WARE *v*. OHIO DEPARTMENT OF REHABILITATION AND CORRECTION ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2024-Ohio-1015.]**

*Mandamus—R.C. 149.43—Public-records requests—Statutory damages—Writ granted in part and denied in part—Relator awarded $2,000 in statutory damages.*

(No. 2023-0090—Submitted December 12, 2023—Decided March 21, 2024.)

IN MANDAMUS.

_____

**Per Curiam Opinion announcing the judgment of the court.**

{¶ 1} Relator, Kimani Ware, brought this original action requesting a writ of mandamus ordering the production of public records in response to six public-records requests. He also seeks awards of statutory damages and court costs. Respondents are the Ohio Department of Rehabilitation and Correction ("ODRC"),

Trumbull Correctional Institution ("TCI"), and five of TCI's employees or independent contractors.[1]  Respondents have filed a motion to declare Ware a vexatious litigator, and Ware has filed a motion for leave to file additional evidence and a motion to strike.

{¶ 2} We grant the writ in part and deny it in part and award Ware $2,000 in statutory damages.  We deny Ware's request for an award of court costs.  We deny respondents' motion to declare Ware a vexatious litigator, grant Ware's motion for leave to file additional evidence, and deny Ware's motion to strike.

## I. BACKGROUND

{¶ 3} Ware is currently incarcerated at the Richland Correctional Institution.  This case involves six public-records requests that Ware allegedly submitted to respondents between May 29, 2021, and July 23, 2022.  At the time of the requests, Ware was incarcerated at TCI.

{¶ 4} Each of the public-records requests at issue involves distinct facts and legal issues, and this opinion describes each request in detail below.  In summary, Ware made the following requests:

- May 29, 2021—a request to Glenn Booth, who was TCI's public-information officer, for records regarding COVID-19 infections at the prison;

- October 6, 2021—a request to Booth for a legal-mail log;

- June 3, 2022—a request to the ODRC Bureau of Records Management for Ware's inmate master and disciplinary files;

- June 5, 2022—a request to TCI's religious-services department for an "informational handbook on religions";

---

1. The respondents named in the complaint are Charmaine Bracy, the former warden at TCI; Glenn Booth, a warden's assistant and the public-information officer at TCI; Frank Cimmento Jr., a commissary manager at TCI; Margaret Armstrong, an independent-contractor chaplain at TCI; and Michael Hickle, a medical supervisor at TCI.  Under S.Ct.Prac.R. 4.06(B), Anthony Davis, the current warden at TCI, is substituted for Bracy as a respondent.

- June 19, 2022—a request to TCI's commissary department for a "list of items [for which] prices [were] increased" and a contract regarding commissary services; and

- July 23, 2022—a request to TCI's medical department for a copy of the policy regarding visitors' COVID-19–vaccination statuses.

Ware avers that he has not received any of the requested documents.

{¶ 5} On January 23, 2023, Ware filed this mandamus action. He requests a writ of mandamus ordering respondents to provide him with copies of the requested records. He also requests awards of statutory damages and court costs.

{¶ 6} Respondents filed a motion to dismiss. We denied the motion to dismiss, granted an alternative writ, and ordered the parties to submit any evidence they intended to present and briefs. 169 Ohio St.3d 1497, 2023-Ohio-1242, 207 N.E.3d 828.

{¶ 7} Respondents also filed a motion to declare Ware a vexatious litigator. In response to that motion, Ware filed a motion for leave to file additional evidence and a supporting affidavit and a motion to strike evidence submitted by respondents in support of their motion.

## II. LEGAL ANALYSIS

### A. Ware's motions

{¶ 8} As an initial matter, we address the two motions filed by Ware in response to respondents' motion to declare him a vexatious litigator.

{¶ 9} Ware has submitted a motion for leave to file additional evidence in response to respondents' motion. Respondents did not file their motion to declare Ware a vexatious litigator until after their deadline to submit evidence. We grant Ware's motion to submit evidence in response to respondents' motion, and we accept as filed the affidavits and exhibits filed by Ware on July 25 and August 11, 2023.

**{¶ 10}** Further, respondents have filed in support of their motion an affidavit of the Portage County Clerk of Courts. Ware has filed a motion to strike that affidavit, averring that he was not served with the affidavit. Respondents have not filed a response to Ware's motion to strike.

**{¶ 11}** S.Ct.Prac.R. 3.11(E)(1) authorizes a party who has been "adversely affected" by a failure to serve a document to file a motion to strike the document. S.Ct.Prac.R. 3.11(E)(2) provides that if this court "determines that service was made as required by [S.Ct.Prac.R. 3.11(E)] or that service was not made but the movant was not adversely affected, it may deny the motion to strike." Here, the affidavit at issue contains a certificate of service signed by respondents' counsel stating that the affidavit was served on Ware by regular U.S. mail. Even if the affidavit was not actually served on Ware, he has not shown that he was adversely affected by that failure. We deny Ware's motion to strike.

*B. Legal standards for mandamus claim*

**{¶ 12}** "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Ware alleges that regarding each of his public-records requests in this case, respondents failed to comply with these statutory requirements.

**{¶ 13}** Mandamus is an appropriate remedy to compel compliance with the Public Records Act. *See* R.C. 149.43(C)(1)(b). To be entitled to a writ of mandamus, Ware must establish a clear legal right to the requested relief and a clear legal duty on the part of respondents to provide it. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Unlike relators in other types of mandamus cases, "[r]elators in public-records mandamus cases need not establish the lack of an adequate remedy in the ordinary course of law." *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 24. Ware must

4

establish his entitlement to the requested relief by clear and convincing evidence. *State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419, ¶ 14.

{¶ 14} Statutory damages shall be awarded to a public-records requester when the requester "transmit[ted] a written request by hand delivery, electronic submission, or certified mail" and the public office or person responsible for the requested records failed to comply with an obligation under the Public Records Act. R.C. 149.43(C)(2). Ware submitted all six of his public-records requests by the prison's electronic-kite system, which constitutes electronic submission for purposes of R.C. 149.43(C)(2). *See State ex rel. Griffin v. Sehlmeyer*, 165 Ohio St.3d 315, 2021-Ohio-1419, 179 N.E.3d 60, ¶ 21. Statutory damages are set at $100 per day for each business day the public office failed to comply with its obligations, starting with the day the requester filed the mandamus action, with a maximum award of $1,000. R.C. 149.43(C)(2). Ware filed this action in January 2023. Under R.C. 149.43(C)(2), Ware is entitled to the maximum $1,000 in statutory damages for each request for which we order respondents to produce responsive records.

*C. Ware was not required to explicitly call his requests "public records requests"*

{¶ 15} Respondents argue that regarding all of Ware's public-records requests, they were not required to respond to them because Ware did not identify them as formal public-records requests. Rather, Ware wrote, "I request a copy of [the documents]," or, "This is a request to obtain a copy of the [documents]," or, "I need a copy of "[the documents]." Respondents argue that these requests were thus "informal request[s] for information." Respondents cite no authority for their assertion that a public-records requester must identify a request as a "formal public records request," and we decline to sustain that argument.

**{¶ 16}** The Public Records Act contains no provision requiring that a requester formally label a public-records request as a "formal public records request," *see* R.C. 149.43(B), and a requester is generally not required to cite a particular rule or statute when making a request, *see State ex rel. Parker Bey v. Byrd*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57, ¶ 14; *see also State ex rel. Ware v. Giavasis*, 163 Ohio St.3d 359, 2020-Ohio-5453, 170 N.E.3d 788, ¶ 19 (requester who improperly labeled a request for records as a public-records request when requesting court records that were subject to the Rules of Superintendence was not prohibited from pursuing the records through the Rules of Superintendence). Rather, "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B). Ware requested copies of documents, and if those documents were public records, respondents were required to provide them—regardless of whether Ware called his request a "formal public records request."

### D. *The May 29, 2021 request*

**{¶ 17}** On May 29, 2021, Ware sent an electronic kite to Booth. Booth's duties at TCI included acting as the institution's public-information officer and responding to inmates' public-records requests. Ware's kite stated, "This is a request to obtain a copy of the documented records of [the] number [of] staff members and inmates that w[ere] infected with (coronavirus) Covid-19 here at Trumbull Correction Institution from January 2020 thru January 2021." Booth responded to that request on June 6 by kite, stating, "I'll discuss your information request this week with you."

**{¶ 18}** Ware avers that Booth never provided him with a copy of the requested records. Booth, however, avers that "Ware was provided" with the record responsive to the request: a copy of an ODRC fact sheet listing the number of inmates and staff at each ODRC institution who tested positive for COVID-19

during a specified period. Respondents have not submitted a copy of that document as evidence, but they have submitted a similar fact sheet pertaining to a period in February 2023.

{¶ 19} Ware bears the burden of production to plead and prove facts showing that he requested public records and that respondents did not make the records available. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 26. He also bears the burden of persuasion to show his entitlement to a writ of mandamus by clear and convincing evidence. *Id.* Here, respondents have submitted evidence in the form of Booth's affidavit showing that they provided Ware with the records requested in the May 29, 2021 electronic kite, and Ware's only evidence contradicting respondents' evidence in that regard is his own affidavit. Absent other supporting evidence, Ware's affidavit is insufficient to meet his burden of showing by clear and convincing evidence that he is entitled to the requested writ. *See State ex rel. Ellis v. Maple Hts. Police Dept.*, 158 Ohio St.3d 25, 2019-Ohio-4137, 139 N.E.3d 873, ¶ 5-6; *State ex rel. Ware v. DeWine*, 163 Ohio St.3d 332, 2020-Ohio-5148, 170 N.E.3d 763, ¶ 13, 25. Because Ware has not shown by clear and convincing evidence that respondents failed to provide the records requested in the May 29, 2021 request, we deny the writ and the request for statutory damages regarding that request.

{¶ 20} Respondents also argue that we should deny the writ regarding the May 29, 2021 request because it was a request for information rather than a request for a specific record. *See State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 30 (requests for information are improper public-records requests). Because we conclude that Ware is not entitled to the writ regarding this request because he has not shown by clear and convincing evidence that respondents failed to provide the requested records, we need not address this argument.

### E. The October 6, 2021 request

**{¶ 21}** On October 6, 2021, Ware sent an electronic kite to Booth requesting "a copy of [the] 14east logbook for July 16, 2021 for times, 7:30am, 8:00am and 8:30, where mailroom clerk Jennings called for legal mail, for me and it was log[ged] in [the] 14east logbook." Booth states that he provided Ware with a copy of the requested logbook, with information involving other inmates redacted. Ware states that Booth provided him with "a heavily redacted copy of the logbook" and that "[t]he times on this record cannot be read by [him]." Ware has not contended that he raised the issue of the logbook's legibility with Booth.

**{¶ 22}** Although Ware and Booth have each submitted as evidence a document that they purport was the document produced in response to the October 6, 2021 request, the documents submitted by them are not the same. Ware's version contains log entries for July 16, 2021, from 12:00 a.m. to 6:06 a.m. All of the inmate-name information on that document has been redacted. Booth's version contains log entries for July 16, 2021, from 4:46 a.m. to 10:16 a.m. The inmate-name information for the entries at 6:15 a.m., 7:15 a.m., 7:45 a.m., and 8:10 a.m. has not been redacted, and the information indicates that Ware was directed to appear in the mailroom at 7:30 a.m., 8:00 a.m., and 8:30 a.m. The remaining inmate-name information has been redacted.

**{¶ 23}** Unlike Ware's May 29, 2021 request for documents relating to COVID-19, Ware and respondents agree that respondents provided a response to the October 6, 2021 request. Respondents have submitted as evidence a copy of the document that they assert was provided to Ware, and they identify Booth as having provided the document to Ware. In addition, respondents reasonably argue that if Ware had believed the document was illegible, he would have raised that issue with Booth when the document was given to him. Ware has not asserted that he did so. Ware has not shown by clear and convincing evidence that respondents failed to produce the documents responsive to his October 6, 2021 request.

**{¶ 24}** We deny the writ and the request for statutory damages regarding Ware's October 6, 2021 public-records request.

*F. The June 3, 2022 request*

**{¶ 25}** On June 3, 2022, Ware sent an electronic kite to the ODRC Bureau of Records Management requesting a "copy of [his] master file, and charges and decisions from [the Rules Infraction Board] disciplinary infraction cases." An ODRC employee wrote back, stating, "Please send a kite to OSC BORM Document Management Records Request." It is not clear from the record what that employee's job title was. On June 6, Ware sent a similar kite to the Bureau of Records Management, to which the same employee responded, "Please consult your case manager." Ware avers that he then spoke with his case manager, who told him to send a kite to the Bureau of Records Management. Ware avers that he never received the requested records.

**{¶ 26}** Respondents do not dispute that Ware's inmate master and disciplinary files are public records. Rather, they argue that such files were exempt from disclosure prior to this court's decision in *State ex rel. Mobley v. Dept. of Rehab. & Corr.*, 169 Ohio St.3d 39, 2022-Ohio-1765, 201 N.E.3d 853, which was decided on June 1, 2022. In *Mobley*, this court declined to apply to inmate master files a previous determination that certain records relating to inmates are exempt from disclosure. *See id.* at ¶ 12, 14-16, 23-26; *see also State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 165 Ohio St.3d 368, 2021-Ohio-1762, 179 N.E.3d 1150, ¶ 41-42. Respondents argue that most ODRC employees were not aware of the June 1 *Mobley* decision when Ware sent his kite on June 3. Even if this were a valid excuse for not providing responsive records, if respondents believed that Ware's master and disciplinary files were exempt from disclosure, they were required to provide Ware with an explanation, including legal authority, regarding why the request was being denied. *See* R.C. 149.43(B)(3). They did not do so.

**{¶ 27}** Respondents also argue that Ware had been required to submit his records request to Booth, who served as TCI's public-information officer. The evidence, however, supports the conclusion that the Bureau of Records Management served as the records custodian regarding those requested records, and an ODRC employee even directed Ware to submit his public-records request to the Bureau of Records Management.

**{¶ 28}** We grant Ware's request for a writ of mandamus ordering respondents to produce records responsive to his June 3, 2022 public-records request, and we award Ware $1,000 in statutory damages regarding that request.

### G. *The June 5, 2022 and July 23, 2022 requests*

**{¶ 29}** On June 5, 2022, Ware sent an electronic kite to the religious-services department at TCI requesting "a copy of ODRC['s] informational handbook on religions." Margaret Armstrong, an independent-contractor chaplain at TCI, responded, stating, "You can look that up in the regular library." Ware avers that the handbook was not in the library and that a librarian told him that he needed to send a kite to the religious-services department to obtain a copy of the handbook. Armstrong avers that she is not a public-information officer and that she does not keep any books in her office other than Bibles.

**{¶ 30}** On July 23, 2022, Ware sent an electronic kite to the medical department at TCI requesting a copy of an order concerning whether visitors to the prison were required to have been vaccinated against or tested for COVID-19 before their visits. Ware also requested any emails related to that order. Michael Hickle, a medical supervisor at TCI, responded, "You need to send this to the department that deals with visitation not medical." Ware avers that Hickle did not provide any responsive records. Hickle avers that he is not a public-information officer, and we infer from Hickle's affidavit that he did not maintain the requested records.

**{¶ 31}** Respondents do not dispute that the records requested by Ware are public records. Rather, they argue that Ware did not submit the requests to the proper records custodian. Booth, who was TCI's public-information officer and was responsible for responding to inmates' public-records requests, avers that he had responded to prior public-records requests by Ware and that Ware knew that the proper internal procedure for public-records requests was to send the requests to "designated public records officer[s]."

**{¶ 32}** The June 5, 2022 and July 23, 2022 requests present a similar legal issue: whether an employee or independent contractor of a public office who is not responsible for maintaining a particular record and whose duties do not normally involve responding to public-records requests may properly refer a requester to the person responsible for the requested record or to where the record may be found or whether doing so constitutes a denial of the request. The Public Records Act imposes obligations on "a public office or person responsible for public records." R.C. 149.43(B)(1). Although R.C. 149.43 imposes obligations on public offices, that does not mean that every employee or independent contractor of a public office who receives a public-records request must directly respond to the request rather than directing the requester to the custodian of the records within the office. Indeed, "[a]ll public offices must adopt a public records policy," but a public office is required to distribute the policy only to "the employee of the public office who is the records custodian or records manager or otherwise has custody of the records of the office." R.C. 149.43(E)(2). Further, although "all elected officials or their appropriate designees" are required to attend training on public-records obligations that has been approved by the attorney general, not *all* public employees or independent contractors are required to attend such training. *See* R.C. 149.43(E)(1).

**{¶ 33}** We conclude that a public office complies with the Public Records Act when an employee or independent contractor of the office who is not

11

responsible for a public record directs the requester to the proper records custodian or to where the record may be located. To interpret R.C. 149.43 to the contrary would mean that a person could make a request to any public employee or independent contractor—for example, a groundskeeper or a maintenance technician—and if that person then directed the requester to the custodian of the requested records or to where the records could be located, the public office would be deemed to have denied the request.

{¶ 34} Here, Ware submitted his June 5 and July 23 requests, respectively, to an independent contractor and an employee of TCI, neither of whom were custodians of the requested records. They each referred Ware to the departments through which they believed the records could be obtained. Because Ware did not submit these two requests to the proper records custodians, and because the independent contractor and the employee each referred Ware to the departments through which they believed the records could be obtained (or to the persons whom they believed were the records custodians), we deny the writ and the request for statutory damages regarding these requests.

### H. The June 19, 2022 request

{¶ 35} On June 19, 2022, Ware sent an electronic kite to Frank Cimmento Jr., a commissary manager at TCI, requesting a copy of the list of items for which the prices had increased from January 1, 2022, through June 15, 2022, and a copy of the contract between the company that provided the commissary services and TCI or ODRC. Cimmento referred the matter to Booth. Booth responded to the request, telling Ware that he had spoken to a cashier supervisor and been informed that "the commissary pricing and contract specifics [were] maintained [by] the Operations Support Center." Booth provided Ware with the name of a "point of contact" at the Operations Support Center. Ware avers that he never received the requested records.

{¶ 36} Respondents do not dispute that the commissary pricing list and contract are public records. They argue only that they were not required to produce the records because Ware did not submit his request to the custodian of the records. Cimmento avers that he did not normally receive public-records requests, and we interpret his affidavit as asserting that he was not responsible for maintaining the records. In contrast to Armstrong and Hickle, however, Cimmento did not respond directly to Ware. Instead, he forwarded the request to Booth. Booth served as the public-information officer at TCI, and respondents assert that he was the employee to whom Ware *should* have made his requests. But instead of producing the requested records to Ware, Booth referred Ware to yet another employee. Respondent TCI was thus aware of this request, and it did not provide the requested records as it was obligated to do.

{¶ 37} We grant Ware's request for a writ of mandamus ordering respondents to produce records responsive to his June 19, 2022 public-records request, and we award Ware $1,000 in statutory damages regarding that request.

*I. Statutory damages and intent*

{¶ 38} In response to Ware's requests for statutory damages, respondents argue that statutory damages should be denied because, in their view, Ware made the public-records requests while specifically desiring that they be denied, presumably so that he could receive statutory damages.

{¶ 39} In support of that argument, respondents quote *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 27, for the proposition that " '[w]hen a party requests access to public records with the specific desire for access to be denied, it cannot be said that the party is using the request in order to access public records; he is only feigning that intent.' " *Rhodes* involved a civil action filed pursuant to R.C. 149.351 alleging a city's improper destruction of public records. *Id.* at ¶ 13. But "*Rhodes* * * * is not apposite to a claim for statutory damages under R.C. 149.43(C)(1)." *State ex rel. DiFranco v. S. Euclid*,

138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136, ¶ 27, *superseded by statute on other grounds as stated in State ex rel. Cincinnati Enquirer v. Cincinnati*, 157 Ohio St.3d 290, 2019-Ohio-3876, 135 N.E.3d 772. "The statutory language leaves no room for a determination that damages may be denied based on an inquiry into the requester's state of mind." *Id.* Even if Ware made his public-records requests with the desire that they be denied, that would not affect his entitlement to statutory damages here.

### *J. Court costs*

{¶ 40} Ware also requests an award of court costs pursuant to R.C. 149.43(C). Ware filed an affidavit of indigency in this matter, so there are no court costs to award. *See State ex rel. Woods v. Lawrence Cty. Sheriff's Office*, 171 Ohio St.3d 238, 2023-Ohio-1241, 216 N.E.3d 663, ¶ 12.

### *K. Respondents' motion to declare Ware a vexatious litigator*

{¶ 41} On June 23, 2023—after respondents filed their merit brief and after Ware's reply brief was due—respondents moved this court to declare Ware a vexatious litigator under S.Ct.Prac.R. 4.03(B). We deny that motion.

{¶ 42} We may declare a party a vexatious litigator if the party "habitually, persistently, and without reasonable cause engages in frivolous conduct under division (A) of this rule." S.Ct.Prac.R. 4.03(B). "An appeal or other action shall be considered frivolous if it is not reasonably well-grounded in fact or warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." S.Ct.Prac.R. 4.03(A).

{¶ 43} In their motion, respondents argue that we should declare Ware a vexatious litigator because he has filed numerous allegedly frivolous actions or appeals since 2018, most of them involving requests for public records. Respondents point to 15 actions or appeals that Ware filed in this court and 13 actions or appeals that he filed in other courts. Respondents have not, however, shown that these actions or appeals were frivolous. Based on information in

respondents' own chart in its motion, Ware was granted some form of relief in five of the cases he filed in this court. Ware was also granted some form of relief in three of the cases filed in the lower courts. And respondents do not cite any decision in which Ware's claims were found to have been frivolous.

{¶ 44} In this case, we are ordering respondents to produce records and awarding statutory damages regarding two of Ware's six public-records requests. Respondents have not shown that Ware has "habitually, persistently, and without reasonable cause engage[d] in frivolous conduct," S.Ct.Prac.R. 4.03(B).

{¶ 45} After respondents filed their motion to declare Ware a vexatious litigator, they filed three sets of affidavits as evidence in support of the motion. Their motion does not discuss these affidavits, and they did not file a supplemental memorandum discussing the affidavits.

{¶ 46} Respondents' affidavits in support of their motion are from employees of county-clerk-of-courts offices and county-prosecutor offices. The affiants generally indicate or allege that Ware has been dishonest with the courts in many of his public-records cases. In many of those cases, Ware asserted that he had sent a public-records request by certified mail. Affiants allege that in some of those cases, Ware did not actually include a public-records request in the certified-mail envelope. Instead, they allege, Ware placed an unrelated document—such as a copy of a judgment entry—into the envelope. Respondents indicate that Ware used the certified-mail tracking number and the signed receipt slip as evidence that he had sent a public-records request by certified mail when he had not.

{¶ 47} For example, Stark County Assistant Prosecuting Attorney Aaron J. Violand avers that on April 12, 2022, he witnessed another attorney open a certified-mail envelope from Ware. They photographed the envelope and what had been inside it—a court filing titled "Respondents' Evidence." Ware later filed a mandamus action in the Fifth District Court of Appeals in which he claimed that he had mailed a public-records request to the Stark County Prosecuting Attorney's

15

Office requesting copies of the office's roster and budget. The certified-mail receipt that Ware attached to the complaint as evidence contained the same certified-mail number as the certified-mail label on the envelope that Violand had witnessed being opened on April 12. Other of the affiants aver to having received similar mailings from Ware. And multiple clerks-office employees aver that their offices maintain detailed logs of public-records requests but that they have no record of receiving certain requests allegedly sent to them by Ware. One affiant cites a decision of the Eighth District Court of Appeals in which Ware was admonished for altering an affidavit—*State ex rel. Ware v. Byrd*, 8th Dist. Cuyahoga No. 110865, 2022-Ohio-1175, ¶ 9-11, 15.

{¶ 48} The evidence presented in the affidavits supporting respondents' motion to declare Ware a vexatious litigator plausibly supports the allegations that Ware routinely lied in affidavits and court filings regarding whether he had sent public-records requests by certified mail. These allegations are concerning. However, Ware did not submit any of the public-records requests at issue in this case by certified mail. Thus, the allegations relating to respondents' vexatious-litigator motion do not touch directly on Ware's actions in this case. Further, respondents filed the supporting affidavits after they filed their motion to declare Ware a vexatious litigator, and respondents have not described the affidavits or discussed their import in this case. Therefore, we deny respondents' motion to declare Ware a vexatious litigator. But we do not foreclose the possibility of granting such a motion in a different case.

### III. CONCLUSION

{¶ 49} Ware is entitled to relief regarding some, but not all, of his public-records requests. We grant Ware's request for a writ of mandamus ordering respondents to produce records responsive to his June 3, 2022 and June 19, 2022 public-records requests. We deny his request for a writ of mandamus regarding his May 29, 2021; October 6, 2021; June 5, 2022; and July 23, 2022 requests. We

award Ware $2,000 in statutory damages but deny his request for an award of court costs.

{¶ 50} We grant Ware's motion for leave to file additional evidence and admit the affidavits and attachments that he filed on July 25, 2023, and August 11, 2023. We deny Ware's motion to strike. And we deny respondents' motion to declare Ware a vexatious litigator.

Writ granted in part
and denied in part.

DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, C.J., concurs in judgment only.

FISCHER, J., concurs in part and dissents in part and would grant respondents' motion to declare Ware a vexatious litigator and concurs in Justice DeWine's separate opinion except for paragraphs 57-59.

DEWINE, J., concurs in part and dissents in part, with an opinion joined by DETERS, J.

_____

**DEWINE, J., concurring in part and dissenting in part.**

{¶ 51} I agree with the lead opinion that Ware is not entitled to a writ of mandamus as to four of his purported public-records requests. But I dissent from the decision to grant Ware a writ of mandamus and award him statutory damages for his June 3 and 19, 2022 requests.

### June 3 and 19, 2022 Requests

{¶ 52} The Public Records Act states that upon request "a public office or person responsible for public records shall make copies of the requested public record available to the requester." R.C. 149.43(B)(1). Here, it is undisputed that Trumbull Correctional Institution ("TCI") designated Glenn Booth, a warden's assistant and TCI's public-information officer, as the person responsible for handling public-records requests on its behalf.

**{¶ 53}** There is nothing unreasonable or unlawful about a prison establishing a point of contact who is responsible for responding to public-information requests. Indeed, one can hardly imagine any other way for an institution to manage such requests. Surely, a prisoner in a meal line cannot ask a cafeteria worker for a copy of the prisoner's file and expect to recover statutory damages if the worker does not comply. *See State ex rel. Ware v. Wine*, 169 Ohio St.3d 791, 2022-Ohio-4472, 207 N.E.3d 807, ¶ 25 (DeWine, J., concurring in part and concurring in the judgment). Ware's theory seems to be that he can ask any employee for any piece of paper without indicating that he is asking for a public record, and if that employee fails to provide the document, he can recover damages under the Public Records Act. But the plain terms of the statute—which obligates the "public office or person responsible for public records" to produce records in their custody upon request—contradict Ware's broad and unworkable reading. R.C. 149.43(B)(1).

**{¶ 54}** It is also undisputed that Ware knew that TCI had designated Booth to handle public-records requests. *See also State ex rel. Ware v. Beggs*, __ Ohio St.3d __, 2024-Ohio-611, __ N.E.3d __, ¶ 3, fn. 1 ("[T]hroughout his history of filing public-records requests, Ware has shown that he knows how to identify the person responsible for public records"). We have denied Ware relief in the past because prison officials had told him to submit public-records requests to Booth but he failed to do so. *See, e.g.*, *Wine* at ¶ 9 (lead opinion); *see also State ex rel. Griffin v. Doe*, 165 Ohio St.3d 577, 2021-Ohio-3626, 180 N.E.3d 1123, ¶ 8 (denying writ because relator did not establish that he sent his public-records request to the person responsible for such requests at the Adult Parole Authority); *State ex rel. Griffin v. Szoke*, __ Ohio St.3d __, 2023-Ohio-3096, __ N.E.3d __, ¶ 9. I would deny the writ for the June 3, 2022 request because Ware did not submit that request to Booth, despite being fully aware that Booth is the person responsible for making TCI's public records available.

18

{¶ 55} As to the June 19 request, Ware alleged in his complaint that Frank Cimmento Jr., the TCI commissary manager, denied that request by failing to provide him with certain commissary records. In that instance, Ware again failed to direct his request to Booth, sending it to Cimmento instead. Cimmento forwarded the request to Booth. And Booth gave Ware specific instructions about how to obtain the information he had requested. Booth advised Ware that commissary-pricing and commissary-contract information was maintained by the Department of Rehabilitation and Correction's Operations Support Center (a unit of the department outside of TCI). Booth provided Ware a specific point of contact at that facility: "Walt Woodruff, Operations Support Center, Office of Administration, Commissary and Cashier Support." There is no evidence that Ware ever contacted Woodruff.

{¶ 56} We have held that a public office does not violate the Public Records Act when it refers the requester to the appropriate office to obtain the requested documents. *State ex rel. Frank v. Ohio State Univ.*, 161 Ohio St.3d 112, 2020-Ohio-3422, 161 N.E.3d 559, ¶ 11-12; *see also Wine*, 169 Ohio St.3d 791, 2022-Ohio-4472, 207 N.E.3d 807, at ¶ 9 (lead opinion). Thus, I would deny the writ as to the June 19 request.

### Request to Declare Ware a Vexatious Litigator

{¶ 57} I reluctantly concur in this court's decision not to declare Ware a vexatious litigator in this case. There is mounting evidence that Ware is abusing the litigation system in order to harass public officials and obtain statutory damages. The affidavits filed in this case suggest that Ware routinely makes false allegations to obtain damages under the Public Records Act.

{¶ 58} At least five recent decisions issued by Ohio's courts of appeals corroborate these allegations. They suggest that Ware does not tell the truth under oath and that he uses a scheme to obtain statutory damages: mail a random document to a public office, note his envelope's tracking number, and then seek a

writ of mandamus plus damages by attaching a fabricated public-records request to the complaint and alleging that it had been ignored. *See State ex rel. Ware v. Byrd*, 8th Dist. Cuyahoga No. 112488, 2023-Ohio-3158, ¶ 27; *State ex rel. Ware v. Stone*, 5th Dist. Stark No. 2023CA00066, 2023-Ohio-3865, ¶ 10-13; *State ex rel. Ware v. Walsh*, 9th Dist. Summit No. 30051, 2021-Ohio-4585, ¶ 21; *State ex rel. Ware v. Fankhauser*, 11th Dist. Portage No. 2023-P-0030, 2023-Ohio-3939, ¶ 16-18, 20-29; *State ex rel. Ware v. Byrd*, 8th Dist. Cuyahoga No. 110865, 2022-Ohio-1175, ¶ 10. Indeed, Ware engaged in such fraudulent conduct in at least one prior lawsuit in this court. *See State ex rel. Ware v. Crawford*, 167 Ohio St.3d 453, 2022-Ohio-295, 194 N.E.3d 323, ¶ 20-21 (lead opinion); *id*. at ¶ 66-72 (DeWine, J. dissenting).

{¶ 59} The facts of this case, however, do not establish that Ware employed such a scheme here. So it is best to defer consideration of the appropriateness of sanctions to a case that squarely presents allegations that Ware engaged in fraud in the case. *See* 172 Ohio St.3d 1473, 2024-Ohio-202, 225 N.E.3d 1052 (Jan. 24, 2024, case announcement in case No. 2023-1354, *State ex rel. Ware v. Vigluicci*, stating, "[P]arties ordered to address in their briefs, and permitted to present evidence as to, whether relator should be sanctioned under R.C. 2323.51, Civ.R. 11, and/or S.Ct.Prac.R. 4.03(B)").

### *In Forma Pauperis Status*

{¶ 60} I would require, however, that the clerk of this court not allow Ware to proceed in future cases without paying the court filing fee unless he adequately shows that he is entitled to do so. Specifically, if Ware requests waiver of a filing fee, I would require him to submit an affidavit showing his certified prison-account balance for each of the previous six months.

{¶ 61} Today, this court awards Ware $2,000 in statutory damages. Since 2021, Ware has been awarded an additional $6,700 in statutory damages by this court. *See State ex rel. Ware v. Akron*, 164 Ohio St.3d 557, 2021-Ohio-624, 174 N.E.3d 724, ¶ 24 (awarding $1,000 in statutory damages); *Crawford*, 167 Ohio

St.3d 453, 2022-Ohio-295, 194 N.E.3d 323, at ¶ 26 (awarding $1,000 in statutory damages); *Wine*, 169 Ohio St.3d 791, 2022-Ohio-4472, 207 N.E.3d 807, at ¶ 17 (awarding $3,000 in statutory damages); *State ex rel. Ware v. Parikh*, 172 Ohio St.3d 515, 2023-Ohio-759, 225 N.E.3d 911, ¶ 17 (awarding $1,000 in statutory damages); *State ex rel. Ware v. Parikh*, 172 Ohio St.3d 49, 2023-Ohio-2536, 221 N.E.3d 835, ¶ 34 (affirming grant of $700 in statutory damages). Yet, when Ware filed the instant action, he obtained a waiver of the filing fee by submitting an affidavit attesting that he did not "have the adequate funds * * * to offer as payment for the filing of this action." Given the substantial damages that have been awarded to Ware in recent years, it is fair to ask for confirmation of the veracity of Ware's declaration.

{¶ 62} Ware is a frequent filer, not only in this court, but in various other courts across Ohio. Indeed, in a July 2023 affidavit filed in another action, Ware attested that he had filed 38 other civil actions in the preceding five years, almost all of which asserted public-records-mandamus claims. *See Stone*, 2023-Ohio-3865 (July 3, 2023). Interestingly though, a review of the public dockets for other lawsuits filed by Ware in Ohio's courts of appeals indicates that Ware has not sought to waive the filing fees in at least three recent cases. *See, e.g.*, *State ex rel. Ware v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 23AP-18, 2024-Ohio-47 (Jan. 10, 2023); *Stone*, 2023-Ohio-3865 (July 3, 2023); *State ex rel. Ware v. Rhodes*, 10th Dist. Franklin No. 22AP-59, 2023-Ohio-2400 (Jan. 25, 2022). There may well be good reason. For an action filed in a court of appeals, when "an inmate who files a civil action * * * against a government entity seeks a waiver of the prepayment of the full filing fees," the inmate must submit an affidavit that, among other things, "sets forth the balance in the inmate account of the inmate for each of the preceding six months, as certified by the institutional cashier." R.C. 2969.25(C). By its terms, this provision does not apply to original actions filed in this court. *See id*; R.C. 2969.21(B)(1)(a). So one has to wonder: Does

Ware claim indigent status in this court, but not in the courts of appeals, because he may do so here without providing an affidavit showing the balance of his inmate account?

{¶ 63} Ware has made an enterprise out of the serial filing of public-records requests and then suing for statutory damages. He takes a shotgun approach—making multiple requests to a wide variety of public offices and individuals and then following up with lawsuits. Ware has a low batting average, but he has eked out a few hits. Most of his claims have been deemed meritless,[2] but the volume of his requests and lawsuits has also resulted in a handful of damages awards. The law entitles Ware to ask for public records, and it allows him to sue for statutory damages if access to public records is wrongfully denied. *See* R.C. 149.43(C)(2). But unless Ware is truly entitled to indigent status, the law does not require

---

2. *See, e.g.*, *State ex rel. Ware v. Beggs*, __ Ohio St.3d __, 2024-Ohio-611, __ N.E.3d __, ¶ 2-6, 20 (denying relief as to two alleged public-records violations); *State ex rel. Ware v. Bratton*, 10th Dist. Franklin No. 20AP-347, 2024-Ohio-260, ¶ 11, 16 (denying relief as to one alleged public-records violation); *Dept. of Rehab. & Corr.*, 2024-Ohio-47, at ¶ 9 (denying relief as to two alleged public-records violations); *Byrd*, 2023-Ohio-3158, at ¶ 31 (denying relief as to four alleged public-records violations); *State ex rel. Ware v. Bryant*, 171 Ohio St.3d 1401, 2023-Ohio-2861, 215 N.E.3d 549 (denying relief as to two public-records violations); *Parikh*, 2023-Ohio-2536, at ¶ 1-3, 34 (affirming judgment denying writ as to ten alleged public-records violations but awarding $700 in statutory damages); *Parikh*, 2023-Ohio-759, at ¶ 1-2, 17 (granting writ as to one of two alleged public-records violations); *State ex rel. Ware v. Kurt*, 9th Dist. Summit No. 29622, 2023-Ohio-202, ¶ 7, 37 (denying relief as to ten alleged public-records violations); *State ex rel. Ware v. Bur. of Sentence Computation*, 10th Dist. Franklin No. 21AP-419, 2022-Ohio-3562, ¶ 3, 4 (granting partial writ as to one alleged public-records violation); *Wine* at ¶ 1, 12, 17 (granting writ as to three of six alleged public-records violations); *Crawford* at ¶ 2 (granting writ as to one of two alleged public-records violations); *Walsh*, 2021-Ohio-4585, at ¶ 1, 12, 22 (denying relief as to one alleged public-records violation); *State ex rel. Ware v. Andrews*, 11th Dist. Lake No. 2020-L-043, 2021-Ohio-4257, ¶ 21-22 (denying writ as to seven alleged public-records violations but awarding $1,000 in statutory damages); *Akron*, 164 Ohio St.3d 557, 2021-Ohio-624, 174 N.E.3d 724, at ¶ 2, 24 (granting writ as to one of two alleged public-records violations); *State ex rel. Ware v. Giavasis*, 163 Ohio St.3d 359, 2020-Ohio-5453, 170 N.E.3d 788, ¶ 1, 34 (denying relief as to seven alleged public-records violations); *State ex rel. Ware v. DeWine*, 163 Ohio St.3d 332, 2020-Ohio-5148, 170 N.E.3d 763, ¶ 1-2, 26 (affirming judgment denying relief as to one alleged public-records violation); *State ex rel. Ware v. Bur. of Sentence Computation Office*, 10th Dist. Franklin No. 19AP-841, 2020-Ohio-2695, ¶ 15 (denying relief as to two alleged public-records violations); *State ex rel. Ware v. Ferrero*, 5th Dist. Stark No. 2019CA00079, 2019-Ohio-3849, ¶ 1, 8 (denying relief as to one alleged public-records violation).

taxpayers to fund his enterprise. If he has the funds to do so, he must pay the same filing fees as any other litigant. Thus, I would take the modest step of requiring Ware to submit a certified statement of his inmate-account balance before the clerk of this may grant him a waiver of filing fees in any future action.

### *Conclusion*

**{¶ 64}** I would deny Ware's request for a writ of mandamus in its entirety and deny his request for statutory damages. I would also require Ware to submit a certified statement of his inmate-account balance for each of the previous six months before the clerk of this court may grant him a waiver of the filing fee in any future action. To the extent that this court does otherwise, I dissent from that portion of the judgment.

FISCHER, J., concurs in the foregoing opinion except for paragraphs 57-59.

DETERS, J., concurs in the foregoing opinion.

_____

Kimani E. Ware, pro se.

Dave Yost, Attorney General, and John H. Bates, Assistant Attorney General, for respondents.

_____