**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Smith*, Slip Opinion No. 2025-Ohio-1856.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-1856

THE STATE EX REL. WARE *v.* SMITH.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Smith*, Slip Opinion No. 2025-Ohio-1856.]**

*Mandamus—Public-records requests—R.C. 149.43—Relator failed to establish entitlement to writ compelling respondent to produce requested public records—Writ and request for statutory damages denied.*

(No. 2024-0621—Submitted January 7, 2025—Decided May 27, 2025.)

IN MANDAMUS.

————————————

The per curiam opinion below was joined by FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. KENNEDY, C.J., dissented, with an opinion.

**Per Curiam.**

{¶ 1} Relator, Kimani Ware, is an inmate at the Richland Correctional Institution ("RCI"). Ware seeks a writ of mandamus ordering respondent, Doug

Smith, whom Ware identifies as RCI's "Library Supervisor," to produce public records under R.C. 149.43, Ohio's Public Records Act.[1] Ware also seeks an award of statutory damages under the Act.

**{¶ 2}** Because Ware has failed to show that he is entitled to the requested relief, we deny the writ with respect to each of his public-records requests and deny his request for an award of statutory damages.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**{¶ 3}** This case involves ten public-records requests that Ware made to Smith by separate electronic kites[2] between April 4 and 9, 2023, seeking records related to the RCI library. Ware requested copies of the following documents, which, for ease of discussion, will be addressed in three groups based on the type of records Ware requested and Smith's responses to those requests.

Group One

- the "Library's procedure manual/operation manual"

- the RCI "monthly library reports from [S]eptember 2022 [through] [M]arch 2023"

- the RCI library's "advisory committee forms from [S]eptember 2022 [through] [M]arch 2023"

Group Two

- the log documenting the weekly hours of inmate accessibility to the library from September 1, 2022 through April 5, 2023

- RCI's monthly library reports from March 2022 through April 2022

- the "Library advisory committee form and meeting minutes for 2018"

---

1. Smith identifies himself as the "Principal" at RCI and states that he oversees the Educational Services Department at RCI, including the librarians and teachers within the educational system.

2. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

- the "legal policy and procedure for assisting another inmate (po[s]ter) that is po[s]ted in the law library"

Group Three

- the "legal printing schedule that is posted in the library"
- "the Librarian office hours schedule that is posted in the library"
- the "Library closure notice/poster [stating] that the library will be closed on Tuesday[] and Thursday[] evenings from 6-8 p.m."

**{¶ 4}** Ware filed this mandamus action on May 3, 2024, asserting that Smith had denied each of his ten public-records requests. In his complaint, Ware alleges that Smith denied roughly half of those requests outright and informed him that his reasons for three of those requests were not sufficient. With respect to several other requests, Ware alleges that Smith told him that he could copy down the requested information from the signs posted in the library. And in one instance, Smith referred Ware to the law-library aide to obtain the requested document.

**{¶ 5}** Ware seeks a writ of mandamus ordering Smith to provide him with copies of each of the requested records, and he also requests an award of statutory damages. In his answer, Smith largely denies the allegations in Ware's complaint. Among numerous affirmative defenses, Smith asserts that Ware "failed to propound a public records request on . . . the proper custodian of records" and that Smith had made all the requested public records within his custody and control available to Ware.

**{¶ 6}** We granted an alternative writ and ordered the parties to submit evidence and briefs. 2024-Ohio-2781. Ware complied with our order by submitting his own affidavit and copies of the relevant electronic kites between he and Smith. Smith then submitted his own affidavit and an affidavit from the prison librarian.

**{¶ 7}** After the parties completed their merit briefing in this case, we declared Ware a vexatious litigator under Rule 4.03(B) and prohibited him "from continuing or instituting legal proceedings in this court without first obtaining leave." *State ex rel. Ware v. Vigluicci*, 2024-Ohio-4997. Ware, however, did not need to request leave to continue this case under Rule 4.03(B); by the time we declared him a vexatious litigator in *Vigluicci*, this case was already pending and all filings had been received. Ware has filed no additional documents in this case that would necessitate leave.

## II. ANALYSIS

### A. *Legal standard for a mandamus claim*

**{¶ 8}** "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1).[3] If a request for public records is denied, in whole or in part, the public office or person responsible for the requested public record is required to provide the requester with an explanation, including legal authority, for why the request was denied. R.C. 149.43(B)(3).

**{¶ 9}** "Mandamus is an appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Grim v. New Holland*, 2024-Ohio-4822, ¶ 5; *see also* R.C. 149.43(C)(1)(b). Ware bears the burden of production to plead and prove facts showing that he requested public records under R.C. 149.43(B)(1) and that "the public office or records custodian did not make the record[s] available." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-

---

3. All references in this opinion to R.C. 149.43 refer to the statutory language in effect when Ware made his public-records requests and when he filed this original action. Although the statute was amended during that period, the language relevant to this case remained unchanged. *See* 2022 Sub.H.B. No. 254 (effective Apr. 3, 2023); Am.Sub.S.B. No. 288 (effective Apr. 4, 2023); 2022 Sub.H.B. No. 558 (effective Apr. 6, 2023); Sub.H.B. No. 343 (effective Apr. 6, 2023); Am.Sub.H.B. No 45 (effective Apr. 7, 2023); 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

Ohio-5371, ¶ 26. Ware also bears the burden of persuasion to establish his entitlement to the writ by clear and convincing evidence. *Id.*, citing *State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5108, ¶ 12, and *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶ 16. As the requester, he must prove by clear and convincing evidence that he has a clear legal right to the requested relief and that Smith has a clear legal duty to provide it. *State ex rel. Berry v. Booth*, 2024-Ohio-5774, ¶ 8.

### B. A requester is not required to identify requests as "public-records requests"

{¶ 10} In each of the requests at issue in this case, Ware wrote, "I need a copy of" and then identified the particular document or documents he sought. In his affidavit, Smith avers that he has not been trained in Ohio public-records law, that he has not received a public-records request during his tenure with the Ohio Department of Rehabilitation and Correction ("DRC"), and that if someone had requested public records from him, he would have directed that person to the warden's administrative assistant who serves as the public-records information officer at RCI. In his affidavit and his brief, Smith claims that he did not understand that Ware was making public-records requests because Ware did not explicitly use the words "public-records request" when he asked for copies of documents pertaining to the RCI library. Smith's brief asserts that he believed Ware's messages to him were "requests on how to obtain the materials [Ware] sought, and not a request for public records."

{¶ 11} The Public Records Act, however, contains no provision requiring that a requester formally phrase a request as a "public-records request," *see* R.C. 149.43(B). Moreover, this court has acknowledged that requesters are generally not required to cite a particular statute or rule when making a request for records. *See State ex rel. Parker Bey v. Byrd*, 2020-Ohio-2766, ¶ 14; *see also State ex rel. Ware v. Giavasis*, 2020-Ohio-5453, ¶ 19. On the contrary, R.C. 149.43(B)(1) directs that "*upon request* by any person, a public office or person responsible for

public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." (Emphasis added.) Therefore, Ware's requests do not fail because he did not use the words "public-records request."

### C. Ware's requests for Group One documents: copies of the RCI library's procedure manual/operation manual, monthly reports, and advisory-committee forms

{¶ 12} On April 4, 2023, Ware sent five separate electronic kites to Smith, requesting a different type of document in each kite. In three of those kites, Ware requested copies of the RCI library's (1) procedure manual/operation manual, (2) monthly reports from September 2022 through March 2023, and (3) advisory-committee forms from September 2022 through March 2023.

{¶ 13} Smith responded to each of those respective requests on April 7 by electronic kite, stating in each response, "Per our conversation on April 7, 2023 at approximately 10:00 a.m. in the library office, I have determined that your reasoning for purchasing a copy of this document is not sufficient and your request is denied. Your statement, 'Because I want a copy,' is not a valid reason." Smith then sent a second response to each of those requests stating, "Closed incarcerated individual form."

### 1. Ware's reasons for requesting public records have no bearing on his ability to access the requested records

{¶ 14} The "primary duty" of a public office or person responsible for public records after receiving a public-records request "is to promptly provide any responsive records within a reasonable amount of time and when a records request is denied, to inform the requester of that denial and provide the reasons for that denial." *State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 11, citing R.C. 149.43(B)(1) and (3).

6

{¶ 15} Although a public office or person responsible for public records is permitted to "inquire about the intended use of the information requested," the office or person may do so only after disclosing that the requester may decline to reveal the intended use of the records. R.C. 149.43(B)(5). Furthermore, R.C. 149.43(B)(4) provides that unless otherwise specifically permitted by law, "no public office or person responsible for public records may limit or condition the availability of public records by requiring disclosure of . . . the intended use of the requested public record." Consequently, this court has held that "[a] person may inspect and copy a 'public record,' as defined in R.C. 149.43(A), irrespective of his or her purpose for doing so." *State ex rel. Fant v. Enright*, 66 Ohio St.3d 186 (1993), syllabus. Simply put, the requester's reason for requesting a record is "irrelevant" to his or her public-records request. *See State ex rel. Quolke v. Strongsville City School Dist. Bd. of Edn.*, 2015-Ohio-1083, ¶ 23-24. Therefore, Smith's assertion that Ware did not have a "valid reason" for his records requests was not a proper basis for denying those requests, and Smith acknowledges as much in his brief.

2.  *A public office or person responsible for public records is not bound by the initial reasons given for denying the underlying public-records request in a subsequent mandamus action to compel production of the requested records*

{¶ 16} Although Smith incorrectly told Ware that he was denying Ware's public-records requests because Ware did not have a valid reason for making those requests, the explanation Smith provided with his initial denial of the requests does not preclude Smith from offering additional reasons or legal authority in defending against Ware's subsequent mandamus action seeking to compel production of the requested records, *see* R.C. 149.43(B)(3).

{¶ 17} In his affidavit, Smith states that in addition to responding directly to Ware's electronic kites, he met with Ware to discuss his public-records requests. The electronic kites Smith sent to Ware confirm that he met with Ware on April 7,

2023, to discuss Ware's requests for copies of the library's procedure manual/operation manual, monthly reports, and advisory-committee forms. Smith avers that during those meetings, he informed Ware that he did not maintain the requested information and that he was not familiar with some of the requested documents. He states that he directed Ware to the librarian and/or library staff for assistance with those requests.

*3. Smith has no duty to furnish records that are not in his possession or control*

{¶ 18} It is well settled that a public office does not have a clear legal duty to furnish records that are not in its possession or control. *See State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 11, citing *State ex rel. Striker v. Smith*, 2011-Ohio-2878, ¶ 28. But in this case, Ware has not named as a respondent any public office—i.e., "any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government," R.C. 149.011(A). The only respondent in this case is Smith, who avers that he does not have access to the RCI library's procedure manual/operation manual, monthly reports, or advisory-committee forms. And just as a public office does not have a clear legal duty to furnish records that are not in its possession or control, a *person* who has no access to a record cannot be a *person* responsible for the record.

{¶ 19} Although R.C. 149.43 imposes obligations on public offices and *persons responsible for public records*, "that does not mean that every employee . . . of a public office who receives a public-records request must directly respond to the request rather than directing the requester to the custodian of the records within the office." *State ex rel. Ware v. Dept. of Rehab. & Corr.*, 2024-Ohio-1015, ¶ 32 (lead opinion) ("*Ware I*"); *see also id*. at ¶ 53 (DeWine, J., concurring in part and dissenting in part) ("There is nothing unreasonable or unlawful about a prison establishing a point of contact who is responsible for responding to public-

8

information requests.").[4] Thus, a plurality of this court in *Ware I* agreed that "a public office complies with the Public Records Act when an employee . . . of the office who is not responsible for a public record directs the requester to the proper records custodian or to where the record may be located." *Id.* at ¶ 33 (lead opinion); *see also State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 9 (inmate failed to show violation of the Public Records Act when the recipient of his kite requesting records responded by telling inmate that he had to submit his records request to the public-information officer at the institution where the inmate was incarcerated).

{¶ 20} In this case, Smith avers that when he met with Ware to discuss Ware's requests for the documents identified in Group One of the requests, he informed Ware that he did not maintain the requested information and "directed [Ware] to Library staff with the intention that they were familiar with the documents and could assist in providing the information he requested." Consistent with *Ware I* at ¶ 33 (lead opinion), and *Ware I* at ¶ 53 (DeWine, J., concurring in part and dissenting in part), Smith's evidence that he directed Ware to library staff to obtain the requested library-related documents supports Smith's argument that he did not deny these requests.

{¶ 21} In a separate affidavit, the RCI librarian avers that she is familiar with Ware, that Ware is familiar with the procedure for requesting copies of printed documents in the library, and that Ware had asked her to print numerous documents in the two years preceding her affidavit. In addition, the librarian avers that Ware never asked her to print copies of many of the documents at issue in this mandamus action, including the library's "procedure manual/operation manual," the "RiCI monthly Library Reports from March 2022 through April 2022," the "RiCI monthly library reports from September 2022," or the "Library Advisory Committee [sic] from September 2022." Those averments do not fully address Ware's requests for

---

4. Three justices concurred in the lead opinion in *Ware I*, and Justice DeWine's opinion concurring in part and dissenting in part was joined by two other justices.

the "monthly library reports from [S]eptember 2022 [through] [M]arch 2023" and the library "advisory committee forms from [S]eptember 2022 [through] [M]arch 2023." Nonetheless, the librarian further avers, "I have complied with every request to print [that] Mr. Ware has made of me. I have never denied Mr. Ware's request to print material."

{¶ 22} Ware has offered no rebuttal evidence to counter the averments of Smith or the RCI librarian with respect to the records set forth in Group One. Consequently, we find that Ware has not carried his burden of proving by clear and convincing evidence that Smith failed to comply with an obligation under the Public Records Act with respect to his requests for copies of the library procedure manual/operation manual, monthly library reports from September 22 through March 2023, and library advisory-committee forms from September 2022 through March 2023. We therefore deny the writ with respect to these requests.

*D. Ware's requests for Group Two documents: a copy of a library log, additional monthly RCI library reports, an additional library advisory-committee form and committee meeting minutes, and the policy and procedure for assisting another inmate*

{¶ 23} Ware made his second group of requests to Smith in four kites: one sent to Smith on April 8, 2023, and three sent to Smith on April 9, 2023. In his April 8 kite, Ware stated, "[I] need a copy of the log that [documents] the weekly hours of inmates['] accessibility to the library here at [RCI] from September 1, 2022 [through] April 5, 2023." And in his April 9 kites, he informed Smith that he needed copies of "the [RCI] monthly library reports from March 2022 [through] April 2022," "the Library advisory committee form and meeting minutes for 2018," and the poster setting forth the legal policy and procedure for assisting another inmate that was posted in RCI's library.

{¶ 24} On the morning of April 10, 2023, Smith provided individual responses to the April 8 kite and the first two April 9 kites, asking Ware, "What do

10

you need this document for?" Later that morning—and without receiving any electronic reply from Ware—Smith sent Ware two additional responses to each of those kites, stating, "We have spoken in my office on 4/10/2023" and "Closed incarcerated individual form." In response to Ware's kite requesting a copy of the poster setting forth the legal policy and procedure for assisting another inmate, Smith sent a kite, stating, "That is something you can obtain in the library. Speak with the Law Library Aide."

**{¶ 25}** In his affidavit, Smith avers that he met with and informed Ware that he did not have access to the requested documents and that he was not familiar with some of them. Smith further avers that during their meeting, he directed Ware to the RCI librarian and/or library staff for assistance with his requests.

**{¶ 26}** As with the first group of Ware's public-records requests, the RCI librarian avers that she complied with every printing request that Ware had made to her and that Ware had never asked her to print copies of the documents in this second group of requests—i.e., the log regarding weekly inmate library access, the March and April 2022 library reports, the 2018 library advisory-committee form and meeting minutes, or the poster setting forth the legal policy and procedure for assisting another inmate. Consistent with *Ware I*, 2024-Ohio-1015, at ¶ 33 (lead opinion), and *Ware I* at ¶ 53 (DeWine, J., concurring in part and dissenting in part), Smith's evidence that he directed Ware to the librarian and/or library staff to obtain the requested library-related documents did not amount to a denial of his requests.

**{¶ 27}** In his affidavit, Ware avers that following Smith's direction, he spoke with the library aide (an inmate) about obtaining a copy of the poster setting forth the legal policy and procedure for assisting another inmate. According to Ware, the library aide stated that he was not allowed to give Ware a copy of the poster and referred Ware back to Smith. But Ware has not offered any evidence to rebut the affidavits of Smith or the RCI librarian to show that he followed Smith's oral direction to submit his requests to the librarian and/or library staff. And Smith

further avers that although he has met with and spoken to Ware several times since April 2023, "[Ware] has not referenced or clarified his requests further."

{¶ 28} On these facts, Ware has not carried his burden of proving by clear and convincing evidence that Smith failed to comply with an obligation under the Public Records Act with respect to his public-records requests for the Group Two documents. We therefore deny the writ with respect to Ware's requests for copies of the log regarding weekly inmate library access, the March and April 2022 library reports, the 2018 library advisory-committee form and meeting minutes, and the poster setting forth the legal policy and procedure for assisting another inmate.

### E. Ware's requests for Group Three documents: copies of RCI library scheduling notices

{¶ 29} The third group of Ware's requests consists of three electronic kites in which he sought copies of certain RCI library scheduling notices. In two kites that he sent on April 4, 2023, Ware told Smith, "[I] need a copy of the legal printing schedule, that is posted in the library," and "[I] need a copy of the Librarian office hours schedule that is posted in the library." On April 7, Ware sent Smith another kite saying, "[I] need a copy of the Library closure notice/poster [stating] that the library will be closed on Tuesday[] and Thursday[] evenings from 6-8 p.m." Within several days of receiving those requests, Smith responded to Ware's requests by separate electronic kites, informing Ware that he could "copy down the hours" or "write the information down" from the posted documents. Immediately after sending each of those responses, Smith sent an additional electronic kite noting that he had closed Ware's kites requesting those records.

{¶ 30} With respect to this third group of requests, Smith avers that he interpreted Ware's requests for copies of the legal printing schedule, the RCI librarian's office hours, and the library closure notice as "asking for information." And in his merit brief, Smith suggests that that interpretation was rooted in the facts that Ware did not expressly state that he was making a public-records request and

12

that the information Ware was requesting was readily available in the library. As discussed above, however, neither the Public Records Act nor our precedent requires a requester to explicitly state that he is making a public-records request.

{¶ 31} Despite Smith's erroneous interpretation of Ware's requests for copies of the RCI library scheduling notices as requests for information, Smith avers that he promptly responded to Ware's electronic kites and directed Ware to the library, where these documents were posted. He told Ware that he could review the documents and copy down the hours or coordinate with the RCI librarian and her staff to obtain copies of those documents.

{¶ 32} In his affidavit, Smith explains that he "believed that [he] was assisting [Ware] by . . . directing him to the proper person to speak with to obtain copies of the records kept in the Library." Indeed, Ware admits that two of the documents he requested—the legal printing schedule and the librarian's office hours—were posted in the library.

{¶ 33} As with the first two groups of records requests discussed above, the RCI librarian avers that she complied with every printing request that Ware had made to her on past occasions. She also avers that Ware never asked her to print copies of the legal printing schedule, the librarian's office hours, or the library closure notice/poster that are the subjects of this third group of records requests. Consistent with *Ware I*, 2024-Ohio-1015, at ¶ 33 (lead opinion), and *Ware I* at ¶ 53 (DeWine, J., concurring in part and dissenting in part), Smith's evidence that he directed Ware to the librarian to obtain the requested library scheduling documents supports the conclusion that he did not deny Ware's requests.

{¶ 34} Ware has offered no evidence to rebut the affidavits of Smith or the RCI librarian. On these facts, Ware has not clearly and convincingly shown that Smith improperly denied these public-records requests or otherwise failed to comply with the Public Records Act. We therefore deny the writ with respect to

Ware's requests for copies of the legal printing schedule, the librarian's office hours, and the library closure notice.

### F. Claim for statutory damages

**{¶ 35}** R.C. 149.43(C)(2) provides that a public-records requester "shall be entitled to recover" statutory damages if (1) the requester has submitted a written request to the public office or person responsible for the requested public records, (2) the request was made "by hand delivery, electronic submission, or certified mail," (3) the request "fairly describes the public record or class of public records," and (4) "a court determines that the public office or the person responsible for public records failed to comply with an obligation" imposed by R.C. 149.43(B).

**{¶ 36}** For the reasons discussed above, Ware has not shown that Smith failed to comply with an obligation under R.C. 149.43(B). Therefore, Ware is not entitled to statutory damages.

## III. CONCLUSION

**{¶ 37}** Based on the foregoing, we deny Ware's claim for a writ of mandamus with respect to each of his ten public-records requests. And we deny Ware's request for an award of statutory damages.

Writ denied.

_____

**KENNEDY, C.J., dissenting.**

**{¶ 38}** Government records are the people's records. That has long been the rule. *State ex rel. Patterson v. Ayers*, 171 Ohio St. 369, 371 (1960). And in recognition of this principle, the Ohio Department of Rehabilitation and Correction ("ODRC") has adopted a policy requiring all of its employees to familiarize themselves with what a public record is, with the understanding that *any employee* may be called on to produce a public record. *See State ex rel. Berry v. Booth*, 2024-Ohio-5774, ¶ 53 (Kennedy, C.J., concurring in part and dissenting in part), citing ODRC Policy No. 07-ORD-02(VI)(A)(2). Although this policy clearly

14

contemplates that ODRC employees will simply produce responsive public records on request, that is obviously not happening. This case is yet another example of an incarcerated person making reasonable public-records requests of an ODRC employee who is responsible for ODRC public records and the ODRC employee's denial of those requests for unlawful—and plainly arbitrary—reasons. And by doing that, ODRC employees have multiplied litigation in Ohio courts, at great expense to Ohio taxpayers.

{¶ 39} Relator, Kimani Ware, an inmate at the Richland Correctional Institution ("Richland" or "RiCI"), sought public records of the Richland library from respondent, Doug Smith, who admits that he oversees the library at Richland. After all, who else would be more responsible for public records of a library than the person who oversees the library? Yet here, a majority of this court refuses to order Smith to produce the requested public records and also denies Ware an award of statutory damages.

{¶ 40} Ware transmitted ten requests for copies of public records to Smith, who had a duty under R.C. 149.43(B) to either (1) produce copies of the requested records "within a reasonable period of time," R.C. 149.43(B)(1); (2) deny the requests in writing and explain the reason, including the legal authority, for the denials, R.C. 149.43(B)(3); or (3) inform Ware that the requests were "ambiguous" or "overly broad" or that the requested records could not be "reasonably identif[ied]" and provide Ware with an opportunity to clarify the requests after informing him of how the records are maintained and accessed, R.C. 149.43(B)(2).

{¶ 41} Because Smith has improperly denied Ware's public-records requests, I would grant the writ of mandamus and order Smith to produce, to the extent they still exist, within ten days:

(1)  the library procedure manual/operations manual;

(2)  the legal-printing schedule;

15

(3) Richland's monthly library reports from September 2022 through March 2023;

(4) the librarian office-hours schedule;

(5) Richland's Library Advisory Committee forms from September 2022 through March 2023;

(6) the notice/poster stating that the library will be closed on Tuesday and Thursday evenings from 6:00 p.m. to 8:00 p.m.;

(7) Richland's log that documents the weekly hours of inmates' accessibility to the library from September 1, 2022, through April 5, 2023;

(8) Richland's monthly library reports from March 2022 through April 2022;

(9) the legal policy and procedure for assisting fellow inmates; and

(10) the Richland's Library Advisory Committee form and meeting minutes for 2018.

And because Smith's responses to Ware's public-records requests violated the duties imposed by R.C. 149.43(B)(3) and (4), I would award Ware $10,000 in statutory damages.

{¶ 42} The majority does otherwise, so I dissent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 43} Ware transmitted ten electronic kites to Smith requesting copies of public records. The majority opinion groups the kites "based on the type of records Ware requested and Smith's responses to those requests." *See* majority opinion, ¶ 3. In my view, the easiest way to discuss Ware's requests for records is by focusing on Smith's responses to Ware, which fall into the following categories: (1) "[Y]our "reasoning for purchasing a copy of this document is not sufficient and your request is denied," (2) "You can copy down" or "You can write down" the information from the posted document yourself, (3) "What do you need this document for?" and (4) "That is something you can obtain in the library. Speak with the Law Library Aide."

{¶ 44} These responses to Ware's requests for public records were all improper denials under R.C. 149.43, the Public Records Act.[5]

### A. Smith's Responses

*1. Reason for Requesting the Record Not Sufficient*

{¶ 45} On April 4, 2023, Ware transmitted three separate kites—kites RICI0423000522, RICI0423000527, and RICI0423000594. In kite RICI0423000522, Ware requested "a copy of the Library procedure manual/operation manual." (Unless corrected with bracketed text, all quotes from Ware's records requests in this opinion are taken verbatim from the kites that Ware submitted into evidence.) In kite RICI0423000527, Ware requested "a copy of the richland correctional institution monthly library reports from september 2022 thru march 2023." In kite RICI0423000594, Ware requested "a copy of the richland correctional institution [l]ibrary advisory[]committee forms from september 2022 thru March 2023."

{¶ 46} Smith responded and closed all three kites, stating the same thing for each one: "Per our conversation on April 7, 2023 at approximately 10:00 am in the library office, I have determined that your reasoning for purchasing a copy of this document is not sufficient and your request is denied. Your statement, 'Because I want a copy', is not a valid reason."

*2. Copy Down the Information Yourself*

{¶ 47} On April 4, 2023, Ware also transmitted kites RICI0423000523 and RICI0423000528. On April 7, Ware transmitted a third kite, RICI0423001312.

---

5. All references in this opinion to R.C. 149.43 refer to the statutory language in effect when Ware made his public-records requests and when he filed this original action. Although the statute was amended during that period, the language relevant to this case remained unchanged. *See* 2022 Sub.H.B. No. 254 (effective Apr. 3, 2023); Am.Sub.S.B. No. 288 (effective Apr. 4, 2023); 2022 Sub.H.B. No. 558 (effective Apr. 6, 2023); Sub.H.B. No. 343 (effective Apr. 6, 2023); Am.Sub.H.B. No 45 (effective Apr. 7, 2023); 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

{¶ 48} In kite RICI0423000523, Ware requested "a copy of the legal printing schedule, that is posted in the library."  In kite RICI0423000528, Ware requested "a copy of the Librarian office hours schedule that is posted in the library."  In kite RICI0423001312, Ware requested "a copy of the Library closure notice/poster that the library will be closed on Tuesday[] and Thursday[] evenings from 6-8pm."

{¶ 49} Smith responded and closed the first two kites, stating, "You can copy down the hours from the posted sheet."  Smith responded and closed the third kite, saying, "You can write the information down from the posted document."

### 3. What Do You Need this Document For?

{¶ 50} On April 8 and 9, Ware transmitted three kites—kites RICI0423001453, RICI0423001563, and RICI0423001606.  In RICI0423001453, Ware requested "a copy of the log that docum[en]t the weekly hours of inmates accessibi[lit]y to the library here at Richland correctional institution from . . . Septem[ber] 1, 2022 thru April 5, 2023."  In kite RICI0423001563, Ware requested "a copy of the richland correctional institution monthly library reports from March 2022 thru April 2022."  In kite RICI0423001606, Ware requested "a copy of the Library advisory committee form and meeting min[ut]es for 2018."

{¶ 51} Smith's first response to each of these kites asked, "What do you need this document for?"  Later, Smith closed the kites stating, "We have spoken in my office on 4/10/2023."

### 4. Get It from the Law Library Aide

{¶ 52} On April 9, 2023, Ware transmitted kite RICI0423001566, requesting "a copy of th[e] legal policy and procedure for a[]ssisting another inmate(po[s]ter) that is po[s]ted in the law library."  Smith responded and closed the kite, stating, "That is something you can obtain in the library.  Speak with the Law Library Aide."

18

### B. Ware Files this Action

**{¶ 53}** It is undisputed that Smith did not produce any of the requested records. On May 3, 2024, Ware availed himself of this court by filing this action for a writ of mandamus under R.C. 149.43(C)(1)(b).

**{¶ 54}** In support of his complaint, Ware submitted an affidavit and copies of the kites he sent to Smith containing his requests for records. After this court granted an alternative writ ordering the parties to file briefs and evidence, 2024-Ohio-2781, Ware again submitted copies of the kites he had sent to Smith. Then, after Smith filed his evidence and merit brief, Ware submitted another affidavit, in which he referred to two ODRC policies addressing library procedures and operations. Ware attached copies of those policies to that affidavit—namely, ODRC Policy Nos. 58-LIB-01 and 58-LIB-03.

#### 1. Ware's Affidavits

**{¶ 55}** In addition to outlining his requests for public records and Smith's responses to those requests, Ware acknowledges that he met with Smith in Smith's office on April 10, 2023. In his initial affidavit, Ware avers that the meeting was limited to Smith asking him "why" he wanted a copy of the legal policy and procedure for assisting another inmate, the monthly library reports, the library-advisory-committee forms and meeting minutes for 2018, and the log documenting inmate access to the library. According to Ware, Smith then denied his requests because Smith believed his reason for requesting the records was not good enough.

**{¶ 56}** Ware avers that when he followed up with the law-library aide, as Smith instructed, the aide said he was not allowed to give Ware a copy of the record and directed Ware back to Smith.

#### 2. ODRC Policies

**{¶ 57}** With his evidence, Ware submitted ODRC Policy Nos. 58-LIB-01 and 58-LIB-03. The first policy addresses "Comprehensive Library Services," and its purpose is to "ensure that each institution maintains and provides access to

comprehensive library services that meet the needs of the institution staff and incarcerated persons." ODRC Policy No. 58-LIB-01(II). The second policy addresses "Selection and Acquisition of Library Materials," and its purpose is to "establish a standard procedure for obtaining, providing, and discarding library materials in a timely and appropriate manner." ODRC Policy No. 58-LIB-03(II). (The version of ODRC Policy No. 58-LIB-03 attached to Ware's affidavit and discussed in this opinion was superseded on December 1, 2024. *See* Ohio Department of Rehabilitation and Correction, *Selection and Acquisition of Library Materials (Effective 12/01/24)*, https://drc.ohio.gov/about/resource/policies-and-procedures/58-lib-institution-libraries/selection-and-acquisition-of-library-materials (accessed May 9, 2025) [https://perma.cc/BQ6Z-MNKA]).

{¶ 58} It is important to know what these policies say because they help illuminate what Smith's role is at the prison generally and in the prison library specifically, which should inform the decision about what public records he is responsible for. On the copies of the policies that Ware submitted into evidence, he has underlined, circled, and put stars beside certain language that he wants to emphasize for the court.

{¶ 59} ODRC Policy Nos. 58-LIB-01 and 58-LIB-03 include links for the definitions of various terms used in those policies, and Ware highlights certain terms to bring them to our attention. There is a definition for "Library Advisory Committee." ODRC's definition of "Library Advisory Committee" provides for the "librarian I or librarian II, or in the absence of the librarian I or II, the school administrator" to organize a committee "for the purpose of input and review concerning institutional library services." Ohio Department of Rehabilitation & Correction, *Policy Definitions*, (updated Apr. 22, 2025) https://dam.assets.ohio.gov/image/upload/drc.ohio.gov/MyOhio/Policies/Policy%20Definitions/Policy%20Definition%20Spreadsheet%20-%20Intranet%202021.pdf (accessed April 29, 2025) [https://perma.cc/22V8-NWNG].

**{¶ 60}** The "Availability of Services" section of ODRC Policy No. 58-LIB-01(VI)(B)(2)(c) requires the "institution library staff" to maintain "a master schedule of library hours and ensur[e] that the schedule is posted in the [incarcerated-person] housing areas, work and program areas, and any other appropriate location throughout the institution." Additionally, ODRC Policy No. 58-LIB-01(VI)(B)(2)(d) requires the "institution library staff" to maintain "an accurate master historical file or log documenting the actual weekly hours of accessibility for the [incarcerated-person] library and law library."

**{¶ 61}** Ware also emphasizes that the "Reports" section of ODRC Policy No. 58-LIB-01(VI)(D)(1) provides, "It is the responsibility of the librarian and school administrator to ensure completion of the Library Monthly Report (DRC4389) by the 5th of each month."

**{¶ 62}** With respect to ODRC Policy No. 58-LIB-03(IV), Ware again highlights the term "Library Advisory Committee" under the "Definitions" section, but he also points to the definition of "Library Procedures Manual." Ware also emphasizes certain procedures in ODRC Policy No. 58-LIB-03(VI)(A)(3)(b) and (c) that the Library Advisory Committee must follow.

**{¶ 63}** The "Library Procedures Manual" is defined as "[t]he procedures maintained that outline day-to-day operations, the library improvement plan, the library priority purchase list, and other pertinent information." Ohio Department of Rehabilitation & Correction, *Policy Definitions*, (updated Apr. 22, 2025) https://dam.assets.ohio.gov/image/upload/drc.ohio.gov/MyOhio/Policies/Policy%20Definitions/Policy%20Definition%20Spreadsheet%20-%20Intranet%202021.pdf (accessed Apr. 29, 2025) [https://perma.cc/22V8-NWNG].

**{¶ 64}** Ware singles out two requirements in the "Procedures" section of the Selection and Acquisition of Library Materials policy. Under the heading "Library Advisory Committee," the policy requires the committee to develop a written improvement plan for "library services and programs annually." ODRC Policy No.

58-LIB-03(VI)(A)(3). He highlights ODRC Policy No. 58-LIB-03(VI)(A)(3)(b), which says that the improvement plan "shall be included in the Library Operations Manual and be reviewed by the Library Advisory Committee." Ware also points to another section under that heading, which requires the Library Advisory Committee to "track biannual member attendance and review . . . the procedural manual." ODRC Policy No. 58-LIB-03(VI)(A)(3)(c).

### 3. Affidavit of Smith

{¶ 65} In support of his arguments that Ware is not entitled to a writ of mandamus or an award of statutory damages, Smith has presented his affidavit and the affidavit of Monetta Ervin, who holds the position of "Librarian I" at Richland.

{¶ 66} Smith avers that he is the "Principal" at Richland and "oversee[s] the Educational Services Department." But ODRC does not list the term "Principal" in its definitions section for terms used in its policies. *See* Ohio Department of Rehabilitation & Correction, *Policy Definitions*, (updated Apr. 22, 2025) https://dam.assets.ohio.gov/image/upload/drc.ohio.gov/MyOhio/Policies/Policy%20Definitions/Policy%20Definition%20Spreadsheet%20-%20Intranet%202021.pdf (accessed April 29, 2025) [https://perma.cc/22V8-NWNG]. ODRC instead uses the term "School Administrator," which means, "The licensed education professional who is the department head for the institution education department." *Id*. So "School Administrator" is Smith's real role at Richland.

{¶ 67} According to Smith, the Educational Services Department provides "education, resources, and library services" to incarcerated persons. Smith avers that he "oversee[s] the Librarians and the Teachers." He further explains,

> My educational duties include monitoring class scheduling and activities; assisting with establishing policies and procedures for various educational programs and serv[ing] as an alternate General Education Development examiner, as needed; collecting and

organizing data for required periodic reports for federal, state and departmental organization; [and] developing materials, supply and equipment requisitions.

{¶ 68} Smith claims that when Ware made his requests for copies of records, he did not understand that "Ware was making a public records request." Instead, Smith believed that Ware was asking him for "information." Those supposed requests for information included Ware's requests for (1) a copy of the "legal printing schedule" in kite RICI0423000523, (2) a copy of the "Librarian office hours schedule" in kite RICI0423000528, and (3) a copy of the "Library closure notice/poster" in kite RICI0423001312.

{¶ 69} Smith states that whenever Ware would send him a kite, he responded and "often met with [Ware]" to discuss his requests. Smith also claims that when he asked Ware "why he needed specific documents, [Ware] usually responded . . . 'because I want a copy.' " Smith admits that with respect to some of Ware's kites, he "responded that [he] did not understand [Ware's] *justification* for seeking the material[s] he requested." (Emphasis added.) He avers that he "believed that [he] was assisting Ware by . . . directing him to the proper person to speak with to obtain copies of the records kept in the Library."

{¶ 70} Smith does not claim that any of the documents Ware sought do not exist. Instead, he asserts that he does not have "access" to various documents relating to the Richland library. According to Smith, those documents include:

[1] the Library procedure manual/operations manual, [2] RiCI's monthly library reports from September 2022 through March 2023, [3] RiCI's library Advisory Committee forms from September 2022 through March 2023, [4] RiCI's log that documents the weekly hours of inmates accessibility to the library from September 1, 2022

through April 5, 2023, [5] RiCI's monthly library reports from March 2022 through April 2022, [6] the legal policy and procedure for assisting fellow inmates, or [7] the RiCi's library advisory Committee form and meeting minutes for 2018.

Smith states that when Ware requested copies of these records, he "met with him and discussed that [he] did not maintain the information and directed [Ware] to the Librarian."

### 4. *Affidavit of Monetta Ervin*

**{¶ 71}** Monetta Ervin avers that she is the "Librarian I" at Richland.  In that role, she provides "reference, research[, and] reader services" and manages the operational aspects of the library, including inventorying and budgeting, shelving books, and generally maintaining the library.

**{¶ 72}** Ervin states that Ware has never requested copies of the records he seeks in this action from her.  She says that ODRC policies are maintained in print form in the library.

**{¶ 73}** Ervin claims that the library does not "maintain documents" about the hours the library is open but that the hours are instead "posted on a sheet of paper on the Library door and in all Housing Units for all incarcerated persons to view."  And she explains that the same is true of documents related to the librarian office hours and the legal-printing schedule.  Ervin states that when these postings are no longer needed, they are discarded.  Similarly, according to Ervin, the library does not maintain documents reflecting library closures.  She avers that if the library closes, a sign is posted on the door and that after the library reopens, the closure sign is discarded.

## II. LAW AND ANALYSIS

### A. The Public Records Act

{¶ 74} Under the Public Records Act, R.C. 149.43, the duties of a public office or person responsible for requested public records are straightforward.

{¶ 75} Upon receipt of a public-records request, the public office or person responsible for the requested public records has a legal duty to promptly prepare and make available all public records responsive to the request. R.C. 149.43(B)(1). The Act further requires that "copies of the requested public record [be made] available to the requester at cost and within a reasonable period of time." *Id.*

{¶ 76} Based on the statutory language, "when an employee of a public office or any person responsible for the public office's public records receives a public-records request, a joint duty arises for either the public office *or* a person responsible for public records to respond to it." (Emphasis in original.) *Berry*, 2024-Ohio-5774, at ¶ 51 (Kennedy, C.J., concurring in part and dissenting in part). A "public office—through its employees—or a person responsible for public records" must answer a public-records request upon receipt of it. *Id.* at ¶ 66 (Kennedy, C.J., concurring in part and dissenting in part). After an employee of a public office receives a public-records request, the employee must answer the request in accordance with R.C. 149.43 or send the request to a person that is otherwise able to respond. *See id.* at ¶ 72 (Kennedy, C.J., concurring in part and dissenting in part).

{¶ 77} If a public office or the person responsible for the public record "ultimately" denies the request, the public office or the person responsible for the public record is obligated to "provide the requester with an explanation, including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3). And "[i]f the initial request was provided in writing, the explanation also shall be provided to the requester in writing." *Id.*

**{¶ 78}** But if a public office or the person responsible for the requested public record believes that the request is "ambiguous" or "overly broad," or that the requested record cannot otherwise be "reasonably identif[ied]," then "the public office or the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties." R.C. 149.43(B)(2).

**{¶ 79}** Moreover, "[u]nless specifically required or authorized by state or federal law," the Public Records Act expressly prohibits a public office or person responsible for the requested public record from conditioning the release of the record on "disclosure" of the identity of the requester *or* from requiring the requester to reveal the "intended use" of the public record. R.C. 149.43(B)(4). "Any requirement that the requester disclose the requester's identity or the intended use of the requested public record *constitutes a denial* of the request." (Emphasis added.) *Id*.

**{¶ 80}** In his brief, Smith intimates that Ware is not entitled to relief because (1) Ware was "offered the opportunity to inspect the records and could have identified which records he wanted to print copies of but failed to do so," (2) the records "concerning library hours . . . do not exist," and (3) Ware requested information about how to find records rather than making a public-records request. Additionally, Smith argues that if Ware is entitled to relief, any award of statutory damages should be limited to $1,000 because "stacking of statutory damages" is not permitted. The evidence shows, however, that Smith improperly denied Ware's requests for records and, in doing so, violated express provisions in R.C. 149.43(B). Accordingly, Ware is entitled to mandamus relief and an award of statutory damages.

## B. Opportunity to Inspect and Print

**{¶ 81}** Smith argues that based on the "totality of the evidence," Ware cannot prove by clear and convincing evidence that his requests for public records were denied, because Ware was directed to where the records were located and where he could have those records printed. In support of that argument, Smith asserts (1) that he met with Ware to explain "where the requested documents were kept," (2) that he was not able to access the requested records, and (3) that he did not interpret Ware's kite requests stating "I need a copy" as requests for copies of public records. For ease of discussion, I start with Smith's third assertion in support of his argument.

### 1. Smith's Claim that He Did Not Understand Ware's Kite Requests Were for Public Records

**{¶ 82}** In his first affidavit, Smith avers that he did not understand that Ware's requests for "a copy" of various records were public-records requests. He claims that he believed that Ware was "asking for information" about how to find records. But Smith's assertion is not plausible or logical.

**{¶ 83}** Every kite Ware transmitted to Smith requested "a copy" of a document. And each of Smith's responses to Ware's kites make it obvious that Smith knew Ware was requesting *a copy* of a record.

**{¶ 84}** In closing kites RICI0423000522, RICI0423000527, and RICI0423000594, Smith stated, "Per our conversation on April 7, 2023 at approximately 10:00 am in the library office, *I have determined that your reasoning for purchasing a copy of this document is not sufficient and your request is denied*. Your statement, 'Because I want a copy,' is not a valid reason." (Emphasis added.)

**{¶ 85}** In closing kites RICI0423000523 and RICI0423000528, Smith stated, "You can copy down the hours from the posted sheet." And in closing kite RICI0423001312, he said, "You can write the information down from the posted document."

**{¶ 86}** In his responses to kites RICI0423001453, RICI0423001563, and RICI0423001606, Smith first stated, "What do you need this document for?" And when he closed these kites, Smith stated, "We have spoken in my office on 4/10/23."

**{¶ 87}** In his affidavit, Smith does not reveal what he said to Ware in his office on April 10. Ware acknowledges that he met with Smith in Smith's office on April 10 but avers that Smith told him that his records requests were denied.

**{¶ 88}** In paragraph 11 of Smith's affidavit, he lists a series of library records and states that he does not have access to those records. In the next paragraph, he avers that when he met with Ware, he told Ware that he "did not maintain the information and directed him to the Librarian." But Smith's averment cannot be true for all of Ware's public-records requests, because, as explained above, Smith denied some of Ware's requests outright.

**{¶ 89}** And in closing kite RICI0423001566, Smith stated, "That is something you can obtain in the library. Speak with the Law Library Aide." So, Smith knew exactly where to find the records Ware sought.

**{¶ 90}** The majority is correct when it says that the Public Records Act does not require a requester of a public record to formally state that this is a "public-records request." Majority opinion at ¶ 11. And this is consistent with ODRC's stated public-records policy. ODRC Policy No. 07-ORD-02(VI)(C)(1) recognizes that the Public Records Act "does not require specific language to make a public records request." *See also Berry*, 2024-Ohio-5774, at ¶ 122 (Kennedy, C.J., concurring in part and dissenting in part). Having rejected Smith's third assertion— that he did not know Ware was seeking public records—I turn to Smith's first assertion.

28

### 2. *Smith's Claim that He Met with Ware to Tell Him Where Documents Were Kept*

**{¶ 91}** Smith asserts that he did not deny Ware's public-record requests. Instead, he claims that he met with Ware to direct him to "where the requested documents were kept." That claim fails for three reasons.

**{¶ 92}** First, some of Smith's responses to Ware's public-records requests are diametrically opposed to his claim that he did not deny Ware's requests. As set out above, Smith expressly denied Ware's public-record requests in kites RICI042000522, RICI042000527, and RICI0423000594 when he closed the kites, saying, "*I have determined that your reasoning for purchasing a copy of this document is not sufficient and your request is denied*." (Emphasis added.)

**{¶ 93}** Smith also denied Ware's request for copies of records when he instructed Ware to go "copy down" or "write" down the information in the records Ware had requested in kites RICI0423000523, RICI0423000528, and RICI0423001312 and when he told Ware to obtain the record sought in kite RICI0423001566 by "[s]peak[ing] with the Law Library Aide."

**{¶ 94}** Second, Smith is an employee of a public office. Therefore, once Smith received and chose to respond to a public-records request, he was required to comply with the law as outlined in R.C. 149.43(B)(1). *See State ex rel. Teagarden v. Igwe*, 2024-Ohio-5772, ¶ 105 (Kennedy, C.J., concurring in part and dissenting in part). Telling a record requester where a record is located so that he or she can find it themselves is not contemplated by the Public Records Act as a valid response to a request for copies of public records. *See* R.C. 149.43(B)(1) through (3).

**{¶ 95}** What is required by the Act is that when an employee such as Smith receives a request for a copy of a public record, he must (1) produce the record at cost and within a reasonable time, R.C. 149.43(B)(1); (2) deny the request in writing and explain the reason for the denial, including legal authority, R.C.

149.43(B)(3); or (3) inform the requester that the request is "ambiguous" or "overly broad" or that the requested record is otherwise not "reasonably identif[iable]," R.C. 149.43(B)(2). And if Smith gave the last of the three responses, he also had to provide Ware an opportunity to clarify the request after instructing Ware how the records are maintained and accessed. *See* R.C. 149.43(B)(2). But Smith did not do any of these things.

{¶ 96} Finally, in each of his responses to Ware's requests for records in kites RICI0423001453, RICI0423001563, and RICI0423001606, Smith asked, "What do you need this document for?" Those responses constituted denials of the requests under the Public Records Act. *See* R.C. 149.43(B)(4) ("Any requirement that the requester disclose . . . the intended use of the requested public record *constitutes a denial of the request*." [Emphasis added.]).

### 3. *Smith's Claim that He Does Not Have Access to Various Records*

{¶ 97} With respect to several of Ware's records requests, Smith contends:

> As the Principal at RiCI, *I do not have access* to the Library procedure manual/operations manual, RiCI's monthly library reports from September 2022 through March 2023, RiCI's library Advisory Committee forms from September 2022 through March 2023, RiCI's log that documents the weekly hours of inmates accessibility to the library from September 1, 2022 through April 5, 2023, RiCI's monthly library reports from March 2022 through April 2022, the legal policy and procedure for assisting fellow inmates, or the RiCI's library advisory Committee form and meeting minutes for 2018.

(Emphasis added.) However, it is important to note that Smith does not assert that Ware is not entitled to relief because the records *do not exist*. Smith merely argues

that Ware is not entitled to a writ of mandamus because Smith *did not have access* to some of the requested records. But that claim fails for two reasons.

{¶ 98} First, when Ware transmitted his public-records requests to Smith, Smith had a duty to either provide copies of the records or send Ware's requests to the person responsible for the public records to respond to the requests. *See Berry*, 2024-Ohio-5774, at ¶ 51 (Kennedy, C.J., concurring in part and dissenting in part).

{¶ 99} Second, Smith's assertion that he does not have access to certain library records is difficult to reconcile with his averment that he oversees the Educational Services Department at Richland and has supervisory authority over Richland's librarians. As someone who oversees the librarians, he has access to the records in the Richland library. It strains credibility for Smith to say that he does not. How could the person who oversees the library and its librarians not have access to library records? Smith never explains.

{¶ 100} And Smith's claim that he does not have access to library records is inconsistent with ODRC Library Policy No. 58-LIB-01(VI)(D)(1), which provides that "[i]t is the responsibility of the librarian *and* school administrator to ensure completion of the Library Monthly Report (DRC4389) by the 5th of each month." And while Smith may or may not serve on the Library Advisory Committee, as the supervisor of the librarians, he surely requires the librarians at Richland to adhere to ODRC policies.

{¶ 101} For these reasons, Smith's claim that he does not have access to library records is simply not believable. He has access to those records but chose not to fulfill Ware's records requests.

### C. Some Records No Longer Exist

{¶ 102} Smith also asserts that Ware is not entitled to a writ of mandamus, because some of the requested records no longer exist—namely, certain documents relating to the Richland library's schedule and accessibility. Importantly, in his affidavit, Smith does not aver that these records did not exist at the time Ware made

his public-records requests. Instead, in his merit brief, Smith argues that the records do not exist today because the librarians discarded the posted documents.

{¶ 103} According to Ervin's affidavit, the library did not retain the documents noting the library hours, librarian office hours, legal-printing schedules, and library closures. But the assertion that all these records no longer exist indicates a violation of ODRC library policies.

{¶ 104} ODRC Policy Nos. 58-LIB-01 and 58-LIB-03 establish the records that ODRC libraries are required to create and retain. As the school administrator at Richland, Smith is required to ensure the completion of the library's monthly report. ODRC Policy No. 58-LIB-01(VI)(D).

{¶ 105} ODRC Policy No. 58-LIB-01(VI)(B)(2)(c) requires the institution's library staff to maintain a master schedule of library hours and ensure that the schedule is posted pursuant to the policy. The library staff is also required to maintain "an accurate master historical file or log documenting the actual weekly hours of accessibility for the [incarcerated-persons] library and law library." ODRC Policy No. 58-LIB-01(VI)(B)(2)(d). The "master historical file or log" must also document "[e]xceptional circumstances to include approved closing such as, but not limited to, unexpected sick leave, fog alerts, required librarian meetings/training and institutional emergencies." *Id.*

{¶ 106} ODRC policy also requires the Library Advisory Committee to develop a "written plan for the improvement of library services and programs annually." ODRC Policy No. 58-LIB-03(VI)(A)(3). And ODRC Policy No. 58-LIB-03(VI)(A)(3)(c) requires the Library Advisory Committee to use a prescribed ODRC form to "track biannual member attendance and review of the procedural manual."

{¶ 107} Therefore, in my view, the evidence establishes that Smith improperly denied Ware's requests for certain documents relating to the library's schedule and accessibility, because there is insufficient proof that the records Ware

sought did not exist *at the time* he requested them. And Smith's actions also violated other provisions of the Public Records Act, which I discuss next.

### D. Smith's Other Violations of the Public Records Act

**{¶ 108}** As stated above, under the Public Records Act, the duties of a public office or person responsible for the requested records are straightforward. As the final arbiter of public policy, the General Assembly requires that if a public office or a person responsible for the public record "ultimately" denies a public-records request, the public office or the person responsible for the record is obligated to provide the requester with an "explanation, including legal authority, setting forth why the request was denied," R.C. 149.43(B)(3). And "[i]f the initial request was provided in writing, the explanation also shall be provided to the requester in writing." *Id.*

**{¶ 109}** Therefore, when Smith avers that he spoke to Ware in his office on April 10, 2023, about some of Ware's requests for public records, yet he gives no indication that he provided Ware with a *written statement* about why those requests were denied, Smith is acknowledging that he violated R.C. 149.43(B)(3). Ware sought those records in written requests, so Smith had to respond in writing.

**{¶ 110}** Moreover, the General Assembly has strictly prohibited a public office or person responsible for public records from conditioning the release of a requested record on the requester's disclosing the "intended use" of the record. R.C. 149.43(B)(4). And if a public office or person responsible for the requested public record conditions the release of the record on the requirement that the requester disclose his or her intended use of the record, that "constitutes a denial of the request." *Id.*

**{¶ 111}** So, Smith's denial of Ware's public-records requests based on his value judgment that Ware did not have a "valid reason" for making the requests in kites RICI0423000522, RICI0423000527, and RICI0423000594 is itself a violation of the Public Records Act. And Smith also violated R.C. 149.43(B)(4) when, in his

initial responses to kites RICI0423001453, RICI0423001563, and RICI0423001606, he asked Ware why he wanted the requested records. Who is Smith to place any value judgment on why a requester wants any public record? "In Ohio, public records are the people's records, and officials in whose custody they happen to be are merely trustees for the people." *State ex rel. Warren Newspapers, Inc. v. Hutson*, 1994-Ohio-5, ¶ 17, *citing State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 81 (1988).

{¶ 112} Because Smith improperly denied Ware's public-records requests and failed to comply with provisions of R.C. 149.43(B), Ware is entitled to an award of statutory damages.

### E.  Statutory Damages

{¶ 113} Smith argues that if this court were to award Ware statutory damages, then the court should not permit Ware to "stack" those damages. Smith asserts that Ware's "multiple communications concerning copies are essentially the same records request." In support of his argument, Smith cites *State ex rel. Dehler v. Kelly*, 2010-Ohio-5724, ¶ 4.

{¶ 114} Smith's reliance on *Dehler* is misplaced. The portion of that per curiam opinion that Smith relies on for his proposition that the Public Records Act does not permit the "stacking of statutory damages" is dicta. In *Dehler*, the majority held that Dehler refused to pay the reasonable costs for the records he had requested and he was therefore not entitled to any statutory damages. *Id*. at ¶ 2. Any further discussion in *Dehler* about whether the Public Records Act disallowed the "stacking" of statutory damages was "unnecessary to resolve the case," *In re Application of Moraine Wind, L.L.C.*, 2024-Ohio-3224, ¶ 14.

{¶ 115} If a person "allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record . . . in accordance with division (B) of this section or by any other failure of a public office or the person responsible for public records to comply with an obligation,"

the aggrieved person may commence a mandamus action. R.C. 149.43(C)(1)(b). If a requester transmits an electronic submission that is written "in a manner that fairly describes the public record," the requester is entitled to recover statutory damages "at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars." R.C. 149.43(C)(2).

{¶ 116} Here, Ware sent ten *separate* transmissions through kites requesting different public records in each one. Each of Ware's requests triggered Smith's duty to respond in accordance with R.C. 149.43(B), requiring Smith to (1) provide copies of the requested records within a reasonable period of time, R.C. 149.43(B)(1); (2) give Ware the opportunity to clarify any request that was ambiguous or overly broad or otherwise failed to reasonably identify the requested record, R.C. 149.43(B)(2); or (3) deny the request in writing setting forth an "explanation, including legal authority," R.C. 149.43(B)(3).

{¶ 117} Because Smith improperly denied Ware's requests and violated R.C. 149.43(B)(3) and (4) by failing to give sufficient responses and by requiring Ware to give a "valid reason" for some of his requests, Ware is entitled to an award of $1,000 in statutory damages for each of his ten requests. *See* R.C. 149.43(C)(2); *see also State ex rel. Ware v. Parikh*, 2023-Ohio-2536, ¶ 48 (Kennedy, C.J., concurring in part and concurring in judgment only in part). That totals $10,000 in statutory damages.

### III. CONCLUSION

{¶ 118} Ware has proved by clear and convincing evidence that he transmitted ten public-records requests to Smith, who then improperly denied those requests and violated R.C. 149.43(B)(3) and (4). I would grant the writ of mandamus and order Smith to produce, to the extent they still exist:

(1)   the library procedure manual/operations manual;

(2)   the legal-printing schedule;

(3)   Richland's monthly library reports from September 2022 through March 2023;

(4)   the librarian office-hours schedule;

(5)   Richland's Library Advisory Committee forms from September 2022 through March 2023;

(6)   the notice/poster stating that the library will be closed on Tuesday and Thursday evenings from 6:00 p.m. to 8:00 p.m.;

(7)   Richland's log that documents the weekly hours of inmates' accessibility to the library from September 1, 2022, through April 5, 2023;

(8)   Richland's monthly library reports from March 2022 through April 2022;

(9)   the legal policy and procedure for assisting fellow inmates; and

(10)  Richland's Library Advisory Committee form and meeting minutes for 2018.

I would order Smith to produce these records within ten days of this opinion and award Ware $10,000 in statutory damages. Because the majority does otherwise, I dissent.

_____

Kimani Ware, pro se.

Dave Yost, Attorney General, and Matthew P. Convery and Marcy A. Vonderwell, Assistant Attorneys General, for respondent.

_____